IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

United States of America

      v.                                   Case No. 7:24-CR-8-EKD-CKM

Richard Hamlett

**Defendant's Objection to Government's Motion for Protective Order**

Richard Hamlett is charged with committing several crimes related to a bankruptcy petition filed in June of last year. He is scheduled for an initial appearance on March 27, 2024. The government filed a request for the court to enter a protective order severely curtailing Mr. Hamlett's ability to review the discovery in his case. *See* ECF No. 6. Mr. Hamlett objects and requests the court only enter a protective order with respect to grand jury material, Jenks Act material, criminal histories of third parties and any material that the government labels as sensitive.

**Brief summary of facts related to the charges.**

In short, the government claims that Mr. Hamlett filed a fraudulent bankruptcy petition designed only to stop a foreclosure on a property owned by one of his corporations. Mr. Hamlett allegedly filed the petition in-person while purporting to be the nephew of one of his employees. At a show-cause hearing, Mr. Hamlett testified that he did not file the petition. However, the Chief Deputy Clerk with the bankruptcy court testified that Mr. Hamlett, not an employee's nephew, filed the bankruptcy petition. She knew him from prior dealings and identified him in court.

Mr. Hamlett was not represented by counsel at the hearing in which he testified, nor was he advised of any of his rights under the Fifth Amendment. Indeed, he was called to the stand by the Court and was not advised that he could decline to testify. And it appears that,

1

even prior to Mr. Hamlett's testimony, the Court was required to, and intended to, dismiss the bankruptcy petition because it was filed under the wrong chapter of the Bankruptcy Code. Mr. Hamlett was subsequently barred from filing any other bankruptcy petitions except for one in which he was personally the debtor. Mr. Hamlett has since complied with that order.

### A protective order is not necessary for most of the discovery.

The government appears to request a protective order that only applies to four categories of documents; however, the draft order provided does not distinguish between these categories of documents and ordinary discovery. In effect, the government is requesting the court impose a blanket protective order which covers every item of discovery, even though the government has only provided arguments that some categories of discovery warrant a protective order. The draft protective order defines these categories of discovery as "original material." But the draft order itself does not otherwise distinguish between "original material" and other discovery. Indeed, as written, the protective order would prevent Mr. Hamlett from receiving or retaining any discovery—even that which is not "original material"—except while in the presence of counsel. And the government has not provided any arguments to show that otherwise prosaic discovery should be protected.

The relevant discovery is likely to contain publicly available bankruptcy records, a transcribed recording of the show cause hearing (no court reporter was present at the hearing), Mr. Hamlett's (minimal) criminal record, a recording of Mr. Hamlett's interview with the FBI, and a few other short documents that contain statements of witnesses and grand jury transcripts. None of these records are likely to contain any sensitive information about third parties. Indeed, the government always redacts personal identifying information before disclosing records to the defense.

Mr. Hamlett is eighty-eight years old. He walks with great difficulty and relies on a cane. He cannot stand up straight. His eyesight is waning. And he is indigent. Counsel's

office does not have readily available handicap parking. Additionally, he desires to play a significant role in his defense and to read every document related to his case. Requiring him to sit with counsel while reviewing discovery needlessly burdens both him and his counsel.[1] Regardless of the burden on Mr. Hamlett and counsel, the government has failed to demonstrate that the draft order is supported by good cause.

**The government's motion for a protective order does not establish good cause.**

As an initial matter, the government only needs a court order to produce grand jury materials pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). The government could otherwise disclose the material, pursuant to Fed R. Crim. P. 6(e)(3)(A)(i) consistent with the government's obligations to follow Fed. R. Crim. P. 26.2, Fed R. Crim. P. 16, or 18 U.S.C. § 3500. Because Mr. Hamlett requested discovery pursuant to Rule 16, the government is otherwise required to produce responsive material. And though the government does not have to produce Jencks Act material before trial, it may choose to do so. Indeed, the government often benefits from early productions of Jencks Act material because it can help to resolve the case short of a trial.

Courts routinely impose protective orders regulating discovery upon a showing of good cause. Fed. R. Crim. P. 16(d)(1). Good cause is essential though, as courts cannot impose protective orders without it. *See id.* "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *See United States v. Johnson*, 314 F. Supp. 248, 251 (D. D.C. 2018) (quoting *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)). Instead, the party requesting the order must

---

[1] Lawyers can often read much more quickly than non-lawyers. And Mr. Hamlett's counsel will have reviewed the discovery independently before reviewing it with him. Requiring Mr. Hamlett to read discovery for the first time in the presence of counsel transforms an ordinary client meeting into a several-hour affair. Many client meetings span several hours, but there is a great deal of difference in productivity between sitting with a client who is simply reading paperwork and actually counseling or discussing the facts or law.

demonstrate "that 'specific prejudice or harm will result if no protective order is granted.'" *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561 (E.D. Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 – 11 (9th Cir. 2002)). Blanket protective orders are often used initially to expedite litigation but are generally subject to later modification. *See United States v. Bulger*, 283 F.R.D. 46, 54 (D. Mass. 2012) ("parties operating under a blanket protective order, such as the government, cannot rely on an unreasonable expectation that such an order will never be altered).

The government's motion for a protective order generally alleges that harm might occur without the order, but it does not provide any specific example of how that harm might occur. The motion is entirely speculative and does not assert a single specific fact related to this case (as opposed to broad suggestions of potential harm) that would support issuing the requested order.

In this case, the only categories of discovery that should be shielded by a protective order are grand jury transcripts, the criminal histories of third parties, and any material that otherwise contains sensitive information. To the extent that the government is providing early *Jencks* statements solely because they are covered by the protective order, Mr. Hamlett will agree that those items be restricted. However, the Court should order that by agreement, and not because the government has satisfied its burden of demonstrating good cause.

The government's arguments that Jencks Act material should be protected are unspecific and largely irrelevant given the nature of this case. For example, the government claims that "these materials also contain significant amounts of third-party information." *See* ECF No. 6 at 3. However, in this case, any Jencks material is likely to be limited to FBI reports about interviewing one of three possible witnesses: the deputy clerk, the person whose name is signed on the bankruptcy petition, or his purported nephew. And counsel

suspects that those interviews were quite brief. Apart from their addresses, which the government will redact, the defense struggles to conceive of what "third party information" will be in the reports. And the government's unsupported suggestion that "public disclosure of these materials could endanger witnesses, subject them to intimidation, and chill their candor in this and other cases" is an empty statement not supported by any reasoned arguments. How would a witness's denial of signing or filing a bankruptcy petition subject them to intimidation? No reasonable person would fear retribution should that fact be made broadly known to the public. And this is not a case where reports of interviews contain information that might not otherwise be discernible from charging documents: here it is eminently clear what the witnesses will testify to. Nor does it seem at all likely that these witnesses may be involved in any other cases. Further, the defense agrees that an order could prohibit Mr. Hamlett from further distributing any of the discovery—so long as he could otherwise possess it (except, as noted, for grand jury records or criminal histories of any witnesses).

Although Mr. Hamlett does not object to the protective order covering Grand Jury materials, the law does not require protective orders simply because the information came from a grand jury. The Federal Rules do not otherwise restrict a defendant or defense counsel from disclosing grand jury materials. Fed. R. Crim. P. 6(e)(2)(A) prevents any "obligation of secrecy" from being imposed on anyone not listed in subpart (B)—and neither a defendant, witness, or defense counsel is listed. And because the government's disclosure to the defense is under 6(e)(3)(A)(i), defense counsel and a defendant are not otherwise restricted from disclosing that information. As such, it does not seem that any disclosure by the defense of grand jury information would be unlawful. Nevertheless, the defense agrees that the protective order may cover this material because any grand jury transcripts would essentially be an early production of Jencks Act material.

5

The protective order requested by the government is that it is far more restrictive than those issued in much more serious cases involving intense media scrutiny and an actual possibility of witness intimidation. The *Bulger* case cited above involved the notorious FBI-informant and mass murderer Whitey Bulger. There, the government was required to identify particular categories of information within the 300,000 pages of documents it had already produced that should be subject to the order. *See Bulger*, 283 F.R.D. at 58.

Because the government (and the defendant's) discovery obligations are ongoing, it may be necessary for some information to be disclosed which is otherwise sensitive, privileged, confidential, or protected by law. Mr. Hamlett has requested that, in such a circumstance, the government be permitted to label the material as "sensitive material" and that the protective order would apply unless and until the Court decides otherwise. Counsel will not engage the court in needless and tiresome litigation about such material.

## Conclusion

This Court should not grant the protective order requested by the government because it is not premised on a showing of good cause. However, the parties appear to agree that some material should be subject to a protective order. Mr. Hamlett requests that his draft order be granted, which prevents him from possessing Jencks Act materials, Grand Jury materials, the criminal histories of third parties, or otherwise sensitive material. Mr. Hamlett could otherwise possess the discovery, but would be precluded from further disclosing the material to anyone else.

Respectfully submitted,

/s/ Benjamin Schiffelbein
210 First Street SW, Ste 400
Roanoke, VA 24011
Benjamin_Schiffelbein@fd.org
540 777 0880